692

**MOSS v. UNITED STATES.**

**Civ. A. No. 7000.**

United States District Court
W. D. Pennsylvania
Dec. 28, 1951.

Malcolm Hay (Goehring & Collin), Pittsburgh, Pa., for plaintiff.

Edward C. Boyle, U. S. Atty., Irwin A. Swiss, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

1. Defendant's Exhibit "B".

FOLLMER, District Judge.

Plaintiff as the Administratrix of the Estate of Charles V. Moss, Deceased, seeks to recover insurance premiums paid by the decedent during his lifetime on a War Risk term insurance policy.

It was stipulated by the parties "that the insured, Charles V. Moss, entered the service on September 22, 1917; that on February 11, 1918, he obtained a $10,000 term insurance policy, and he paid premiums to include December, 1918; that he was honorably discharged on December 16, 1918; that on January 1, 1919, the policy lapsed; that on June 10, 1927, the insured made application for reinstatement of $5,000 term insurance; that simultaneously with the application for reinstatement, he applied for conversion to a twenty-year endowment policy, at a premium of $208.50 per year; that in that application, he named his mother as beneficiary; that he married on November 20, 1929, and on June 16, 1938, he changed the beneficiary to his wife; that on May 27, 1942, the insured filed a claim for disability compensation; that in connection with the application for disability compensation, the insured filed, on April 29, 1943, a statement by Dr. Barnhardt, his physician; that on August 4, 1942, the Veterans Administration denied the claim of the insured for service-connected disability; that compensation for service-connected disability was granted on August 14, 1943, to be effective May 26, 1942; that on September 24, 1943, the insured died."; and that as shown by the Certificate of Death [1] the immediate cause of death was "Heart Disease; Coronary arteriosclerosis; Cardiac enlargement; myocardial damage and myocardial insufficiency with Bundle Branch Block Thrombosis femoral artery right with gangrene right leg and foot."

I also find that Charles V. Moss, the deceased veteran, in his application for reinstatement of yearly renewable term insurance [2] answered certain material questions as follows:

"7. Have you been ill, or contracted any disease, or suffered any injury, or been prevented by reason of ill health from at-

2. Plaintiff's Exhibit 1.

tending your usual occupation, or consulted a physician in regard to your health, since lapse of this insurance? (Answer 'Yes' or 'No') no If so, give dates and full particulars, including the name and address of physician.

\* \* \* \* \* \*

"10. Are you now in good health? Yes.

"11. Have you ever been treated for any disease of \* \* \* heart or blood vessels no \* \* \*."

The application was accompanied by a medical report of Moss's physician, Dr. Barnhardt, that Moss was in good health and, inter alia, that he found no abnormality of the heart. In 1943, in connection with an application by Moss for disability compensation, Dr. Barnhardt made a statement [3] that he had treated Moss from 1919 to 1942 for a heart condition "myocarditis and coronary sclerosis" with extensive treatment during 1920-1922 for a heart involvement, "phlebitis of the right leg" also referred to by the doctor as "thrombosis."

While the doctor and the deceased were good friends, both members of a large chorus, and the deceased frequently dropped in to see the doctor on social calls, it is also admitted that he did during the period from 1919 to 1927 consult the doctor professionally on a paid basis "once a month or something like that, or once in two months" for a checkup on his heart condition generally but principally for the thrombosis or blood

vessel condition, and on the doctor's advice Moss wore an adhesive rubber stocking continously.

The Veterans' Administration refused payment of the policy on the ground of fraud and also refused to return the premiums paid. Plaintiff is not contesting the cancellation of the policy but is seeking refund of the insurance premiums.

## Conclusions of Law

The policy of insurance having been secured by a fraudulent misrepresentation on the part of the insured, his estate cannot, after the fraud has been discovered and the policy avoided, maintain an action for the return of the premiums paid by him.

## Discussion

 The statements of Moss, the insured, in his application for reinstatement that he had not been ill or consulted a physician in regard to his health since the lapse of the insurance, and that he had never been treated for any disease of the heart or blood vessels, were false and known by the insured to be false at the time they were made. The necessary elements of fraud in the making of such an application are "(1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) and with the intent to deceive (5) with action taken in reliance upon the representa-

3.

"April 29, 1943.

"This is to certify that I have practiced medicine since 1897; that I am duly licensed to so practice in the State of Pennsylvania; and that since 1901 my offices have been located at 710 Brushton Avenue, Pittsburgh, Pa.; that I have known Charles V. Moss since 1917, when he resided at 6536 Winslow Street, since which time I have been his physician; that the first serious ailment of which he complained was in 1918, when he called at my office in military uniform, complained of pain and discomfort in his chest and back and shortness of breath, and upon examination I found him to be suffering from heart involvement which I then diagnosed as myocarditis and coronary sclerosis, for which I prescribed medicine at that time; that he called at my office for similar treat-

ment on several occasions after his discharge, prior to 1920, when he called for treatment of serious similar involvement, phlebitis of the right leg, and bronchial irritation; that he received extensive treatment for this condition from 1920 forward for about two years; that I treated him continuously for his heart condition, intermittently, until 1942, when he was admitted to the U. S. Veterans Hospital at Aspinwall; that following his discharge from said hospital, I continued to treat him for said heart involvement, phlebitis of the right leg which is of 20 years standing, multiple arthritis moderately acute, chronic bronchial irritation, heart involvement firm since 1918, with enlargement and mycardial damage, and coronary arteriosclerosis, which is permanent and will continue in the same degree.

"/s/ H. A. Barnhardt M.D."

tion."[4] There can be no doubt that these were material facts. These were not slight or temporary ailments such as an ordinary cold or the like.[5] On facts such as in this case, it must follow that there was an intent to deceive and that action was taken in reliance upon the representation.[6] The answers were knowingly false, were made to be relied upon, and were relied upon.[7] In this posture of the case, the law is well settled that after the fraud is discovered and the policy avoided an action for return of the premiums may not be maintained.[8]

A short comment on decisions cited and relied upon by plaintiff seems in order. In Cardwell v. United States, 5 Cir., 186 F.2d 382, a directed verdict for defendant was set aside, but the evidence, if believed, would have negatived any false statement knowingly made as to a material fact. There was evidence that during the period of lapse of the policy insured had consulted a physician concerning an abdominal pain and had been told that it was due to nervousness and imagination and that there was nothing physically wrong with him; that the physician prescribed no treatment and that at the time insured made the application for reinstatement, the insured had every reason to believe that the ailments of which he complained to the doctor were of a minor inconsequential nature. That is not the situation here. Even if the testimony be accepted, that at the time of the application for reinstatement his doctor believed that his heart condition "had cleared up", it is undisputed that he knew he had consulted a physician and been treated for a heart condition, and not only had but was, at that time, being treated for a serious condition of the circulatory system.[9]

In Edwards v. United States, 6 Cir., 140 F.2d 526, the element of fraud was in dispute. There was evidence that insured had consulted a physician concerning high blood pressure and albumen, had been advised that it was due to tonsils and abscessed teeth and that his condition became normal after they were removed. The court there pointed out the distinction between disease and conditions which might be termed slight troubles or temporary and light illnesses, and that the question of whether an applicant has been treated for any disease of the heart, kidney or blood vessels does not include the mere consultation with a physician or a physical examination for the purpose of determining whether or not the person is afflicted with a disease in any of these bodily organs. The facts in the present case, however, are not consonant with such a situation.

United States v. Rountree, 5 Cir., 141 F.2d 1009, is a situation similar to Edwards v. United States, supra. In Bailey v. United States, 5 Cir., 92 F.2d 456, there was a similar situation plus affidavits on a claim for permanent and total disability filed later and directly contradictory. This raised an issue of facts. In the present case, the later statements may be entirely disregarded without altering the undisputed facts already adverted to.

Plaintiff finally contends that even though there were misstatements of fact justifying an avoidance of the policy, there may, nevertheless, be a refund of the premiums paid, and cites James v. United States, D.C.W.D.N.C., 89 F.Supp. 330. There the application for reinstatement was rejected and unearned premiums were involved. The present situation is one of a reinstated policy [10] with a subsequent avoidance thereof and the rule announced in Ray v. United States, supra, applies.

Plaintiff, therefore, is not entitled to a refund.

4. Pence v. United States, 316 U.S. 332, 62 S.Ct. 1080, 1083, 86 L.Ed. 1510; Danaher v. United States, 8 Cir., 184 F.2d 673.

5. Danaher v. United States, supra; Halverson v. United States, 7 Cir., 121 F.2d 420.

6. Danaher v. United States, supra.

7. Raives v. Raives, 2 Cir., 54 F.2d 267.

8. Ray v. United States, 7 Cir., 121 F.2d 416; Bavisotto v. United States, D.C. W.D.N.Y., 18 F.Supp. 355.

9. Danaher v. United States, supra.

10. There was a reinstatement of the term insurance with a simultaneous conversion to an endowment policy but this, as pointed out in Raives v. Raives, supra, does not alter the situation.