## UNITED STATES v. MEYER.
### No. 5451.

Circuit Court of Appeals, Third Circuit.
March 5, 1935.

Harlan Besson, U. S. Atty., of Trenton, N. J., Isador S. Worth, Asst. U. S. Atty., of Riverside, N. J., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Thomas E. Walsh, of Washington, D. C., for the United States.

C. Richard Allen, of Camden, N. J., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Meyer, a soldier, took out a policy of war risk insurance for $10,000 which lapsed in 1918 upon his discharge from the army. On October 1, 1925, the veteran applied for and obtained reinstatement of his policy in the amount of $5000 on a showing satisfactory to the government that, though in ill health, he was not suffering from total permanent disability. He converted the policy from term insurance to endowment insurance, paid back premiums of $307.65 as required in such case and thereafter paid current premiums until the summer of 1929 when, through force of circumstances, he let the policy lapse. In June 1932, he made application to the United States through the Veterans Bureau for payment of benefits because of claimed total permanent disability occurring while the policy was in force during a period "ever since November 1, 1925." When the government refused payment, the veteran brought this suit and had a verdict. From the judgment that followed, the government appealed on grounds which will appear in the discussion.

The court, charging the words of the policy, "Upon due proof of the total permanent disability of the insured while this policy is in force, monthly installments shall * * * be payable to the insured * * *," submitted two questions to the jury which, for the plaintiff to recover, it was required to decide in the affirmative. They were:

"First, that the plaintiff (the insured) was totally and permanently disabled sometime during the period between October 1, 1925, and August 1929;" and second, "That his disability is the result of injury or disease or of the aggravation thereof suf-

fered or contracted in active military or naval service during the World War."

There was evidence that the plaintiff was in ill health when he was discharged from the army and when the original policy lapsed, and also when it was reinstated "without medical examination," as provided by statute. Section 400, Act Oct. 6, 1917, 40 Stat. 409. The Act of June 7, 1924, 43 Stat. 607, amended by Act March 28, 1934, 48 Stat. 524, at least with respect to original policies, presumes a service connection between ill health when in the service and later disability. However, with respect to the reinstated policy here in suit there was evidence of war connected disability of the veteran sufficient to sustain the verdict on the second question submitted.

The real controversy arose on the first question, whether, during the life of the reinstated policy, the plaintiff was totally and permanently disabled, which was contested by the government on the premise that he must prove that total permanent disability occurred *after* the reinstatement of the policy, and on the contention that he offered no such proof; indeed, that by his own testimony he proved the contrary, and that in consequence the court erred in refusing its motions to dismiss the complaint and for a directed verdict in its favor.

The government, in support of its position, relies chiefly on affirmative answers made by the plaintiff to questions asked him on cross-examination, whether "when (he) took this policy in 1925, (he was) in the same physical condition as (he is) now," and whether the condition of his right arm was the same "today as then." The government insists that, upon the logic of the answers, similarity of disability before and after the reinstatement of the policy precludes recovery in any event, for if his disability, confessedly permanent, was total before as well as after the reinstatement, the policy is void as to disability benefits, and if partial after reinstatement as before it is not covered by the policy. If that were all there was in the case we think the government's contention arguendo should prevail. But there was more. It was this:

The plaintiff developed incipient ear trouble when in the service, a symptom of the disease later diagnosed. In 1921 his ear trouble became more pronounced and a partial paralysis of his right arm and leg developed. From symptoms then prevailing, a physician, having the plaintiff under daily observation from September 1921 to June

1922, made a final diagnosis of anatricrotic lateral sclerosis which is a neurological disease involving the central nervous system, characterized by progressive degeneration of the tracts that carry impulses to and from the brain, and deterioration of the cells that originate the impulses. The disease is progressive in that the conditions are certain slowly to grow worse.

When in this state the government sent the plaintiff to the University of Pennsylvania for vocational training. There he studied and in June, 1926, was awarded a diploma in a course of accounting. Manifestly his disability at that time though permanent was not total. Just when, in a slowly progressive disease of this character, it became total would be difficult to determine within a brief period. Only a jury could say when it occurred. Anyway, while attending the University his policy of insurance was reinstated and during that time and thereafter during the period of the reinstated policy his partially paralyzed right side, lame right leg and palsied right arm very slowly became worse, making writing physically difficult and vocationally impossible. The strength of his right arm decreased, his limp remained, his hair turned grey, and his hearing became more impaired. In that condition he found it impossible to obtain a position as an accountant, or any other employment that required writing or physical activity. He tried raising chickens for a time but that failed because he had to hire men to do his work.

In 1932 a physician in the government service, testifying for the government, examined the plaintiff and diagnosed his case as hysterical hemiplegia or paralysis, which indicates damage to the central nervous system.

■ The plaintiff's physician examined him again in 1933 and found the same symptoms and additional ones as a progressive development of the original condition, resulting in an advanced stage of multiple sclerosis, which means hardening in the multiple areas throughout the central nervous system, verifying his original diagnosis. He further testified that the plaintiff then suffered from total permanent disability and that in his opinion he was unable to follow a substantially gainful occupation and that the condition was certain to continue. The government's physician was not allowed to give his opinion on this point but indicated, in concurrence with the plaintiff's physician, that the plaintiff might do some work that did not require the use of his right arm, such as tending a counter in a candy store, running a little news stand, going from door to door selling small objects. On testimony of this character we think the jury could validly find total permanent disability occurring after the reinstatement of the policy and while it was in full force, notwithstanding the plaintiff's answers to the two quoted questions, the purport and probative effect of which were for the jury to decide.

Accordingly we should affirm the judgment except for a matter which has arisen since the argument on this appeal.

The jury by its verdict found for the plaintiff and fixed the date of his total permanent disability at July 1, 1929. Thereupon the court entered judgment that the plaintiff recover from the defendant "the sum of $1523.75, representing payments due him from the date of said disability, to wit, July 1, 1929 to the date of this judgment, at the rate of $28.75 per month." Thus the judgment awarded the plaintiff disability benefits relating back approximately three years prior to the date of his application to the Veterans Bureau.

The government, after trial and after appeal, assails for the first time, as a jurisdictional matter, the validity, not of the judgment as a whole, but of the allowance for past benefits under a provision of the policy which reads: "The total permanent disability benefits may relate back to a date not exceeding six months prior to receipt of due proof of such total permanent disability * * *."

The complaint contains no averment that due proof of total permanent disability had been furnished the Veterans Bureau and at the trial the plaintiff produced no evidence that such due proof had been given and therefore there was no date of proof of disability from which the relation back of benefits could be reckoned under the policy.

The complaint, however, contains a paragraph identical, mutatis mutandis, with paragraphs in the complaints in United States v. Ranes (C. C. A.) 48 F.(2d) 582, and United States v. White (C. C. A.) 48 F.(2d) 584, alleging in substance that the plaintiff, in June 1932, made application to the Veterans Bureau for payment of insurance benefits for total permanent disability and that, on September 6, 1932, the Bureau refused to pay him insurance, disputed his claim and disagreed with him as to his rights to the same, but the paragraph contains no reference to due proof of disability being

either made or received and of course no date of due proof, if actually made, is named.

 In the Ranes Case, as in the instant case, the government by its answer admitted the allegations of the cited paragraph of the complaint; in the White Case it denied them. In both cases the appellate court held that the policy, providing that total permanent disability benefits may relate back to a date not exceeding six months prior to receipt of due proof of such disability, required, in order to make the provision effective, an allegation or evidence of the fact that proof of the claim had been made to the Bureau. It held in both cases, as we hold in this case, that such proof is a condition precedent to the plaintiff's right to recover back benefits, binding alike on him, on the Bureau and on the courts.

The court however thought in the Ranes Case that the government's admission of the plaintiff's allegations that he had applied to the Bureau for insurance benefits, that the Bureau had disputed his right to them and refused payment should be deemed a sufficient averment of the presentation of due proof of total permanent disability as of the date (of the refusal) alleged. However, in the White Case, where the government denied the allegations of the paragraph, the court held the plaintiff literally to the provision of the policy.

We think, under the terms of the policy, the government had a right to due proof of the plaintiff's claimed total permanent disability on his application for insurance benefits in order intelligently to consider his claim and to protect itself against imposition, and that such due proof cannot be gathered from averments that are directed to altogether different matters, namely, the application and its refusal. Indeed, the refusal by the Bureau might, for ought we know, have been based on the very absence of proof of the claimed disability. In any event the government, in the policy, limited its liability for back benefits and by that limitation the policyholder is bound. So also are the courts. The policy in express terms calls for proof of disability. The date of such proof is a necessary factor in calculating allowable benefits, which by the terms of the policy shall not exceed six months prior to its receipt.

 We are constrained to hold that while the paragraph in the complaint alleging application for insurance benefits and refusal, resulting in dispute, was validly sufficient to maintain the action for future benefits, Man-

ke v. United States (C. C. A.) 38 F.(2d) 624, failure to aver or prove that the requisite proof of the claimed disability had been given the Bureau was failure to aver or prove a jurisdictional matter in relation to payment of back benefits. It follows that the amount which the judgment allowed the plaintiff for benefits in the past is invalid.

Regarding the issue of back benefits clearly distinct and separable, within the law of Gasoline Products Co. v. Champlin Refining Co., 283 U. S. 494, 51 S. Ct. 513, 75 L. Ed. 1188, from the other issues in the case already tried, the judgment is reversed and the case remanded to the District Court with instructions to take further testimony before a jury as to the fact that the plaintiff gave and as to the date on which the Bureau received due proof of the plaintiff's total permanent disability and, on proper evidence, to enter judgment in favor of the plaintiff for installments accruing not exceeding six months prior to that date.