**BAILEY v. UNITED STATES.**

No. 8484.

Circuit Court of Appeals, Fifth Circuit.

Nov. 5, 1937.

Chas. D. Russell, of Savannah, Ga., for appellant.

Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., and Dunbar Harrison, Asst. U. S. Atty., of Savannah, Ga.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On August 22, 1933, appellant brought this suit on a five-year convertible war risk policy, reinstated on October 7, 1927, as of July 1, 1927, on an application for reinstatement received by the Bureau on July

6, 1927. The claim in the suit was that between October 7, 1927, when the policy was reinstated, and April 1, 1928, plaintiff, by reason of stricture and diverticulum of the esophagus, became totally and permanently disabled.

In addition to denying permanent and total disability as alleged, the United States affirmatively presented the defenses of fraud in the reinstatement of the policy in October, 1925, and again in October, 1927, in that the applications therefor contained false statements and misrepresentations upon which the government relied in reinstating it. The case was fully heard both on plaintiff's case for permanent and total disability, and on defendant's issue of fraud in the applications for reinstatement.

At the conclusion of all the evidence the court, of the opinion, as he stated, that the evidence conclusively showed that false statements of fact had been made in connection with the reinstatement applications, and that this was fraud without regard to whether plaintiff knew or believed the statements to be false, directed a verdict for defendant on the ground that the reinstatements had been procured by fraud.

Appellant urged below, and insists here, that the statute authorizing the reinstatement, and the incontestability provision of the policy,[1] in providing for incontestability except for fraud and nonpayment of premiums, intended and in law effected continuance of the policy protection except as against knowing and willful fraud on the part of the insured, and that the evidence is wholly insufficient as matter of law, to show willful and intentional fraud. Appellant, in short, insists that in order to defeat his policy of insurance it must be shown that appellant, to obtain its reinstatement, knowingly and falsely made statements which were not true. He insists, therefore, that the District Judge erred in holding that, if the statements were false, appellant could not recover, whether he knew them to be so or not. He insists, too, that the proof falls far short of establishing, as matter of law, that the statements were false. He urges upon us that the District Judge has invaded the province of the jury and taken from them the question the evidence raised, whether the reinstatement applications contained false statements, and whether appellant made them knowing or believing that they were false.

Appellee, on its part, maintains that the evidence conclusively establishes that the statements made to secure the reinstatement were false, and that it is immaterial whether or not appellant knew them to be so. It maintains further that the evidence conclusively shows that their falsity was known to appellant.

The evidence relied upon as proof of fraud was: Bailey's reinstatement application in 1925, in which he stated that he was in as good health as he was at the date of the lapse; that he was not permanently and totally disabled; that he had not been ill, or contracted any disease, or suffered any injury, or been prevented, by reason of ill health, from attending his usual occupation, or consulted a physician in regard to his health, since the lapse of his insurance, and the statements of Dr. Johnson, in the medical examiner's report attached to the application, that he found no abnormality of his nervous system, abdomen, digestive system, or otherwise, and that he recommended the acceptance of the risk as a first class risk.

In the 1927 application which Bailey signed, none of the answers were filled out, but the answers of Dr. Johnson in the medical report accompanying the application were essentially the same as those made in his 1925 medical report.

As proof of the falsity of the reinstatement application the United States points to: Bailey's statement in his claim of permanent and total disability, filed in 1931, that "the disability claim, and general condition of stomach, throat and nerves, began early in 1927"; the statements made in his application for disability compensation filed June 9, 1929, that his disability, stomach, throat, and nervous condition began in August, 1919; to the affidavit of Johnson accompanying that application, that in August 1919 he "examined appellant for gastro-enteritis, and found the following symptoms; vomiting, epigastric pain, diarrhoea, loss of weight, regurgitation of food," that "appellant's condition continued to get worse with each attack which occurred two or three times a year, until he became too weak to do any work;" to Johnson's affidavit made Au-

---

[1] Incontestability—9. "This policy shall be incontestable after the insurance has been in force for six months from the date of issuance or reinstatement, except for fraud or non payment of premiums."

gust 12, 1932, as to the diagnosis he had made in 1919 and his statement that he "continued to get worse with each attack which occurred two or three times a year until he became too weak to work. In the absence of X-ray examination at that time the exact nature could not be determined. .Later, after X-ray examination, he was found to be suffering from esophageal stricture and diverticulum, and that he was positive now that the conditions found in 1919 were due solely to the conditions found by X-ray examination made recently"; to Johnson's affidavit made April 26, 1925, that he "treated Bailey in 1919 for gastro-enteritis, and that he was troubled with regurgitation and a condition which indicated some acute trouble; that he urged him to have X-rays made to determine the cause of his trouble; that he had not treated Bailey since before he went to the Marine Hospital; that he believed Bailey was then totally and permanently disabled in the sense that he could not follow any substantially gainful occupation; that he was thin and emaciated, and from 1919 on has continued to deteriorate"; and, finally, to the testimony of other physicians that the history appellant gave of attacks of vomiting or regurgitation of food immediately after eating indicated that he had had this diverticulum for many years.

We think that at best for appellee, the evidence made only an issue of fact upon its defense of fraud and that it was error to instruct a verdict in its favor. The fact that after the diverticulum was discovered Johnson, appellant's physician, then believed that the condition he had observed in 1919 had been permanently disabling all the time, while evidence, is not conclusive, either that the statements in connection with the application for reinstatement were falsely made, or, that appellant knew that they were. Too, while the statement of appellant in the claim he filed in 1931 for total and permanent disability, that the disability occurred "early in 1927," is evidence that when in July, 1927, he made application for reinstatement, he knew that he was sick, it is not conclusive proof that he did. Especially is it not in view of the undisputed testimony that he had his severe attack of colitis in November of 1927, after the application for reinstatement had gone in and had been granted, and that until that attack he had been working steadily. The statement of appellant in his application for disability compensation filed in June, 1929, that he had been disabled since 1919 is indeed evidence from which the jury might find that he knowingly made false statements in connection with his reinstatement in 1925, and knowingly participated in Johnson's making false statements in 1925 and in 1927, but it is not conclusive proof that he did. An entirely reasonable explanation of the apparently conflicting statements might well be that after appellant had suffered his severe attack of colitis in November, 1927, and had in 1929 for the first time discovered the presence of the diverticulum, the strangeness and fatality of the newly discovered affliction had so engrossed him and his physician, Johnson, that from that time forward they saw diverticulum in every prior symptom, and, as men will do in the presence of what seems to them a workable and consistent solution of all their prior questions and doubts, they attached greatly exaggerated importance to symptoms which before had seemed of only passing interest.

We think it quite plain that the evidence appellee tendered on its issue of fraud, at best for it, made only an issue for the jury. It did not establish, as matter of law, either that the statements made in the application for reinstatement were false, or that they were knowingly and willfully made with intent to deceive. That some of the statements made in connection with appellant's claims under his war risk policy, and for compensation, cannot be reconciled with others made by him and his physician, is quite plain. It was for the jury, however, and not for the court, to say which statements were true and which were false, which were innocently and which fraudulently made.

We think, too, that the policy provision that it should be incontestable after six months from the date of issue or reinstatement, except for fraud, means just that, and that unwitting, nonwillful misstatements of fact could not constitute fraud within the provision.

We disagree, therefore, with the District Judge and with the appellee that the statements appellant made to get his policy reinstated would, if false, defeat his recovery, even if the statements were honestly made under the belief that they were true.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent herewith.